Including Cases of April and October Terms, 1921.

GEORGE A. PEARRE, JR., Executor and Trustee,

*vs.*

LILLIE L. GROSSNICKLE, Individually and as Executrix, et al.

*Relinquishment of Dower—Post-nuptial Contract—Evidence— Equitable Estoppel.*

The wife has full power, by contract with her husband, to relinquish her interest or right of dower in his estate. p. 5

Evidence as to a conversation between a husband and wife at the time of the execution of the former's will, being merely to the effect that she understood what he owned and what he had given her, and that because of what he had given her he did not intend to give her more, and she was satisfied, *held* not to prove a contract by which the gifts previously made by the husband to the wife were accepted by her in lieu of her interest or dower in his estate. pp. 6-8

In case of post-nuptial as of ante-nuptial contracts for the release of the wife's interest or dower in her husband's estate, it is not enough that the husband granted property to the wife equal to or exceeding the value of her interest or dower therein, but it must be proved that the grant was made and accepted as in lieu of such interest or dower. p. 8

A widow is not estopped from participating in the distribution of a fund belonging to her husband's estate by her participation in the administration of the personal estate, by her failure to claim the proceeds of the sale of a farm belonging to the estate, made by a testamentary trustee, or by her receipt from

such trustee for her children of certain rentals collected by him for property of her husband's estate, no one having been misled to his injury by such acts on her part.      pp. 8, 9

Where one devises no part of his real estate to his wife, her legal rights therein are not affected by his will.      p. 9

A widow who does not elect to take her dower under Code (Vol. 4), Art. 46, sec. 4, is entitled under section 3 of that Article to one-third of the deceased husband's estate.      p. 9

*Decided June 28th, 1921.*

Appeal from the Circuit Court for Frederick County, In Equity (URNER, C. J., PETER and WORTHINGTON, JJ.).

Bill by Lillie L. Grossnickle, individually and as executrix under the will of George O. Grossnickle, deceased, and others, against Charles A. Collins, and George A. Pearre, Jr., executor and trustee under said will. From a decree for plaintiff Lillie L. Grossnickle, defendant executor and trustee appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, ADKINS, and OFFUTT, JJ.

*Milton G. Urner, Jr.,* and *George A. Pearre,* with whom were *Urner & Urner* on the brief, for the appellant.

*Frank L. Stoner* and *William M. Storm,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

George O. Grossnickle at the time of his death, on the 18th day of December, 1918, was engaged in business in the City of Frederick, Maryland, with one Charles A. Collins, trading under the firm name of Collins & Grossnickle.

The firm at such time was seised and possessed of a lot of land with the buildings and improvements thereon which were used by it in the conduct of its business. In addition to said real estate the firm also owned and possessed a considerable amount of personal property.

By his last will and testament, dated the 21st day of May, 1918, George O. Grossnickle bequeathed his household furniture to his wife, Lillian L. Grossnickle, one of the appellees. The rest and residue of his estate he devised and bequeathed unto George A. Pearre, Jr., in trust, for the benefit of his five infant children, the other appellees in this case; and named the said Pearre and his said wife as executors of his will.

In December, 1919, Lillian L. Grossnickle, individually and as executor under the will of her husband, and as mother and next friend of said infant children, filed a bill in the equity court of Frederick County against the said Charles A. Collins, individually and as surviving partner of the firm of Collins & Grossnickle, and against George A. Pearre, Jr., both as executor and trustee under the will of George O. Grossnickle, alleging therein, among other things, that an offer to purchase George O. Grossnickle's interest in said real estate and personal property of the firm had been made to the executors by Collins, the surviving partner, at an amount less than its real value, and that George A. Pearre, Jr., her co-executor, was disposed to accept the offer and sell Grossnickle's interest in said property for such inadequate sum.

Other allegations were made in the bill and an answer to the bill was filed by each of the defendants, but we are relieved of the necessity of stating with more particularity either the allegations of the bill or the averments of the answers, because of an agreement thereafter filed by the parties to which we will again refer.

The prayers of the bill asked (1) that an order be passed restraining and enjoining Collins, the surviving partner, and Pearre, the co-executor and trustee, from selling, disposing of, or in any manner interfering with the said partnership assets, and (2) that receivers be appointed to administer the property and assets of said partnership under the direction and supervision of the court.

But by the agreement of the parties above referred to, it
was agreed (1) that the one undivided half interest of George
O. Grossnickle, deceased, in the personal property of the firm,
should be sold by the executors unto the said Charles A. Col-
lins for the sum named therein, and (2) that trustees should
be appointed by the court for the sale of said real estate and
the same sold by them; and that after the payment of the
costs and expenses incident to the sale and the payment to
Collins of his "share or interest" from the proceeds of such
sale, the balance thereof to

"be payable to the estate of George O. Grossnickle or
those claiming through or under him, either by will or
by law, shall be payable into court and deposited on
interest, subject to the rights of the parties and claim-
ants thereto, to be determined by the court or courts in
this or any future cause, suit or matter in regard to
the same, all rights being reserved as to said fund, the
same as if said fund was real estate."

A decree as agreed upon was passed by the court and a
sale of said real estate was made and the proceeds thereof
paid into court or deposited in accordance with the terms and
provisions of said agreement; and the sole question presented
by this appeal is whether the said Lillian L. Grossnickle is
entitled to participate in the distribution of said fund. Her
right to participate therein is denied by the appellants be-
cause, as they allege, she in the lifetime of her husband relin-
quished her rights in his estate by an oral agreement which
was fully executed by him.

After bequeathing the household furniture to his wife, the
testator, George O. Grossnickle, says in his will:

"I have during my lifetime given to my wife our
mansion house situated on College Park in said city;
also three pieces of property on Fifth Street in said
city and also a certain sum of money. This I have
given her in lieu of what she would have taken or
might have been given and devised to her by my last
will and testament, and this she is familiar with,

understands and consents, and I am, therefore, not
leaving her anything under this will for the reason that
I have provided for her in this way during my life."

The College Park property which is referred to in the will
as one of the properties given to the wife in his lifetime, the
value of which at the time of the testator's death was placed
at fifteen thousand dollars, was bought in 1915, and was paid
for by George O. Grossnickle, but when the deed therefor
was taken the property was by it granted to George O. Gross-
nickle and Lillian L. Grossnickle, his wife, as tenants by the
entirety. At this time Mr. Grossnickle was, so far as the
record discloses, in good health and actively engaged in busi-
ness, and it was only in the event of his wife surviving him
that the property was to become hers, for had her husband
survived her, the property would have been his. The said
three pieces of property on Fifth Street, of the estimated
value of fifteen hundred dollars, also mentioned in the will
as property given by the testator in his lifetime to his wife,
were acquired by the wife largely, if not altogether, through
the financial aid of her husband, he having from time to time
given to her money which it seems she applied to the payment
of the purchase money owing thereon, or to the payment of
certain encumbrances resting thereon, which had to be paid
off, or satisfied, before she could acquire an absolute unen-
cumbered title thereto.

There can be no question under the laws of this State as
to the power of the wife, by contract with her husband, to
relinquish her interest or right of dower in her husband's
estate. *Hill* v. *Boland,* 125 Md. 113. But the question here
is did the wife, Mrs. Grossnickle, upon the evidence disclosed
by the record, enter into an agreement or contract with her
husband, such as the law contemplates, by which she relin-
quished her interest or dower in his estate.

The evidence relating to such alleged contract is confined
to what was said by the testator and Mrs. Grossnickle, his

wife, on the 21st day of May, 1918, the day upon which the will of Mr. Grossnickle was executed.

On that day both Mr. and Mrs. Grossnickle were in the Church Home Infirmary in the City of Baltimore. Mrs. Grossnickle had been there for several weeks, having undergone a major surgical operation, from the effects of which she had not at the time recovered. Mr. Grossnickle was there receiving medical attention and treatment for a disease from which it was thought he would not recover. While in this condition he had Mr. Pearre come from his home in Montgomery County to write his will. Before doing so he first talked with Mr. Grossnickle alone. In this conversation, Mr. Pearre was told by Mr. Grossnickle what property he possessed and what property Mrs. Grossnickle possessed. Included in the property owned by the wife were the College Park property, which was held by them as tenants by the entirety, and the Fifth Street properties. Separate lists were made by Mr. Pearre of the properties possessed by Mr. Grossnickle and those possessed by Mrs. Grossnickle; and the value of each piece of property on each of these lists was placed opposite thereto. When this was done Mrs. Grossnickle was called from the adjoining room, which at the time was occupied by her, and as Mr. Pearre testified "the whole thing was gone over, the memorandum, what he had given her and what the other properties were worth and what the farm was worth, just the same as we had gone over them, and the whole thing was discussed, and he said to her: 'Madam, you know I provided for you during my life and that was *our understanding*, and that the rest of this money you understand I want for the children.' And she said: 'Oh, yes, I understand that, that is all right.'"

As to what was said at that time, Mrs. Grossnickle testified that Mr. Pearre was the "one who went over the valuations with daddy, my husband," and, when they were through valuing his, "they valued mine, and Mr. Pearre spoke up" and said, "if daddy gave me any more that I would have more

than what the children would have and Mr. Grossnickle asked me if I was satisfied. Who would not have been satisfied, with a dying husband; I told him, yes, I was satisfied," and that was all she said. Upon cross-examination she was asked by Mr. Pearre: "Did not he (Mr. Grossnickle) say to you: 'Now Madam, that is what I want, I have already provided for you and you understood it when I was giving it to you'? A. *I never heard him say those words.* Q. Didn't you say: 'Yes, I understand that, that is perfectly satisfactory'? A. He asked me whether I was satisfied; I never remember of my saying 'I understand.' Q. Didn't you say that 'I understand'? A. No, sir; he said to me 'Madam, are you satisfied; and I said 'yes.'" There was, as she stated, very little said.

Mrs. Burnett, sister of Mr. Grossnickle, who was present at the time of the conversation above referred to by both Mr. Pearre and Mrs. Grossnickle, testified that, when her brother asked Mrs. Grossnickle if the provision in the will above quoted was satisfactory to her, she said, "yes, perfectly satisfactory to me," but she did not hear her in that conversation say that she understood it. This witness did say, however, that at the time the will was read by Mr. Pearre "there was a hesitation when he came to the part as to her rights, she said, I understand, that is perfectly all right, I want my children taken care of.'" But this answer was not made at the time when Mr. Pearre testified that Mr. Grossnickle said to her "Madam, you know I provided for you during my life and that was our understanding," meaning, as it is claimed, that what he had given her in his lifetime was to be in lieu of her interest or dower in his estate. But both Mrs. Grossnickle and Mrs. Burnett, a witness of the defendants, testified that Mrs. Grossnickle did not answer said question saying she so understood; and there is no evidence whatever to be found in the record—other than the answer said by Mr. Pearre to have been made by Mrs. Grossnickle to the said question of her husband, which could readily have been misunderstood by her—that the gifts made to her in his lifetime, or the plac-

ing of the title to the College Park property in both him and her as tenants by the entirety, were at such time made and done with the understanding that the same was in lieu of her interest or dower in his estate. As was said by the learned court below in its opinion, "the sum of what she said is that she understood what Mr. Grossnickle owned and what he had given her and that because of what he had given her he did not intend to give her more, and she was satisfied"; and she did not understand, as she says, that she was not to have of the estate of which her husband died seised and possessed, such part thereof to which she was entitled by law.

In cases of postnuptial contracts, as in cases of antenuptial contracts, for the release of the wife's interest or dower in her husband's estate, it is not enough that the husband granted property to the wife equal to, or exceeding, the value of her interest or dower therein. It must be proved that the grant was made and accepted as in lieu of such interest or dower. 9 *R. C. L.* 600; *Cowdry* v. *Cowdry,* 72 N. J. Eq. 951, 12 L. R. A. (N. S.) 1176.

The evidence in this case fails to prove a contract by which the gifts from Mr. Grossnickle to his wife were made and accepted as in lieu of her interest or dower in his estate.

But the further contention is made by the defendants that Mrs. Grossnickle is estopped from participating in the distribution of said fund (1) because of her participation in the administration of the personal estate, (2) because of her failure to make any claim to the proceeds of the sale of a farm of the estate made by Mr. Pearre as testamentary trustee, and (3) because she received from Mr. Pearre for the use of her children certain rentals collected by him from a house belonging to the estate of her husband.

The definition of an equitable estoppel, as defined by Mr. Pomeroy and adopted by the court in *Rodgers* v. *John,* 131 Md. 455, "is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise ex-

isted, either of property, of contract, or of remedy, as against
another person who has in good faith relied upon such con-
duct, and has been led thereby to change his position for worse,
and who on his part acquires some corresponding right, either
of property, of contract or of remedy"; and "whether the doc-
trine should or should not be applied depends upon the facts
and circumstances of each particular case, and unless the party
against whom the doctrine has been invoked has been guilty
of some unconscientious, inequitable, or fraudulent, act of
commission or omission, upon which another has relied, and
been misled, to his injury, the doctrine will not be applied."

It is evident that no one was misled to his injury because
of the facts upon which such contention is founded, and con-
sequently the rights of Mrs. Grossnickle were not affected
thereby.

Mr. Grossnickle devised no part of his real estate to his
wife, and consequently her legal rights therein were not af-
fected by his will.  *Thomas* v. *Wood,* 1 Md. Ch. 296; *Dur-
ham* v. *Rhodes,* 23 Md. 233.  And as she did not elect to take
her dower under Section 4 of Article 46 of the 4th Vol. of
the Code of Public General Laws, she is entitled under the
provisions of Section 3 of Article 46 of the said Code to one-
third of her deceased husband's real estate.  But as the fund
here in question was derived from the sale of the partnership
lands in which the testator had only one undivided one-half
interest, the widow, Mrs. Grossnickle, is entitled to only one-
sixth of said fund.

It follows from what we have said that the decree of the
court below, ordering that said fund shall be distributed one-
half to Charles A. Collins, one-sixth to Lillian L. Grossnickle,
and one-third to George A. Pearre, Jr., trustee under the will
of George O. Grossnickle, deceased, will be affirmed.

*Decree affirmed, with costs.*